**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2016 MAY 23 A 10: 51

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RUSSELL BURROUGHS, individually
and doing business as Computer Services,
LLC,

      Defendant.

_____/

CASE NO. 2:16-cv-368-WHA

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America alleges as follows against Defendant Russell Burroughs, individually and doing business as Computer Services, LLC:

1. The United States seeks to permanently restrain and enjoin Russell Burroughs from:

    a. preparing, filing, or assisting in the preparation or filing of federal tax returns, amended returns, or other tax-related documents and forms, including any electronically-submitted tax returns or tax-related documents, for any entity or person other than himself;

    b. preparing or assisting in the preparation of federal tax returns that he knows will result in the understatement of any tax liability or the overstatement of federal tax refunds;

    c. engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and 6701; and

d. engaging in any fraudulent or deceptive conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

2. This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a duly authorized delegate of the Secretary of the Treasury of the United States, and is commenced at the direction of the Attorney General of the United States.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) and 26 U.S.C. §§ 7407(a) and 7408(a) because Burroughs has engaged in specified conduct subject to penalty within this district and a substantial portion of the events or omissions giving rise to the United States' claims in this action occurred within this district.

## THE DEFENDANT

5. Burroughs is a paid tax preparer who resided in Montgomery, Alabama, and has been preparing federal income tax returns for customers for more than 10 years. He and his business, Computer Services, LLC, established in 2011, operated out of an office at 300 Water Street, Suite 315F, Montgomery, Alabama. Burroughs was the sole owner of Computer Services, LLC, and the only person who prepared tax returns for its customers at the business.

6. Although Burroughs is an Electronic Return Originator, he holds no professional certifications. During an investigation of his practices as a return preparer, Burroughs reported that he graduated from Troy University in 1979 with a Bachelor's Degree in Computer Science and minored in Accounting, but has no formal training or certification in tax preparation. Before his incarceration, Burroughs' full-time job was with Alabama Department of Finance, where he

2

was a computer program analyst. During tax season, he would prepare tax returns after normal business hours at his office in Montgomery.

7.    In January 2011, Burroughs established the business entity where he prepared tax returns, Computer Services, LLC.

8.    In December 2013, Burroughs was indicted on 33 counts of willfully aiding the filing of tax returns that he knew were false for tax years 2008 through 2011.

9.    In June 2014, Burroughs pled guilty under 26 U.S.C. § 7206(2) to one count of aiding in the preparation of a false tax return that he knew was false in order to improperly increase his customer's tax refund.

10.    Burroughs has been sentenced to a term of imprisonment of 36 months, which commenced on January 2, 2015. He is currently incarcerated at Yazoo City FCI, in Yazoo City, Mississippi. As a condition of his plea agreement, Burroughs agreed to be permanently enjoined from preparing tax returns for anyone other than himself and his spouse.

## SUMMARY OF DEFENDANT'S ACTIVITIES

11.    For the processing years 2010 through 2012 (covering tax years 2009 through 2011), Burroughs prepared at least 1,486 individual tax returns. He prepared an additional 20 returns during the 2013 and 2014 filing seasons.

12.    As a paid return preparer, Burroughs obtained from the IRS a Preparer Identification Number (PTIN) PXXXXX8840.

13.    In order to electronically file returns on behalf of customers, Burroughs obtained an Electronic Filing Information Number (EFIN) of XX3195 in December 1995.

14.    Burroughs continually and repeatedly claimed bogus business expenses to offset a customer's taxable income and reduce the overall tax liability reported by his customers. Self-

3

employed taxpayers use Schedule C, Profit (Loss) From Business, to report the gross receipts and deductible expenses incurred by the business. When business expenses exceed income, the resulting loss reported on the Schedule C offsets the taxable income reported by the taxpayer from other sources. Burroughs claimed expenses on Schedules C that his customers did not incur and used the losses reported there to decrease his customers' taxable income.

15. Burroughs' primary method of falsifying federal income tax returns to reduce his customers' tax liabilities or maximize their tax refunds was to fraudulently create business expenses on Schedule C to increase or generate a refund and/or to maximize his customers' Earned Income Tax Credit (EITC).

    a. The EITC is a refundable tax credit for working people with low to moderate income. To qualify for the EITC, a taxpayer must have earned income from working for someone or from running or owning a business or farm and meet basic rules set forth by the IRS. The requirements for claiming the EITC are set forth in 26 U.S.C. § 32. The amount of the EITC depends on the taxpayer's income, filing status, and number of claimed dependents. The EITC can reduce the amount of tax a person owes or provide a refund even if the taxpayer owes no tax. The EITC is easily abused because falsification of the information necessary to claim or increase it is difficult for the IRS to detect.

    b. A taxpayer can claim a larger EITC by claiming multiple dependents and, for certain income ranges, taxpayers with higher annual incomes are entitled to a larger credit than those with lower incomes. The amount of the credit

increases as income increases from $1 to the annual ceiling set by the IRS and decreases as income increases beyond the ceiling.

c. To bring the taxpayer's reported earned income within the range to qualify for the EITC or to maximize the EITC, unscrupulous preparers may increase the number of dependents claimed on a return, or, as defendant regularly did, inflate or fabricate business income or expenses reported on a Schedule C.

16. Burroughs reduced his customers' tax liabilities and/or obtained false EITC refunds for them by claiming losses for fictitious businesses or claiming false expenses to create false losses for legitimate businesses. Burroughs filed a Schedule C on 15 of the 20 tax return examples discussed below. Each of the 15 Schedules C was falsified.

17. Many of the refunds Burroughs obtained for his customers who filed Schedule Cs were based on Burroughs' fraudulent depreciation claims. Burroughs did not provide descriptions of the assets being depreciated on any of the tax returns discussed below. By fabricating business expenses, Burroughs was able to exaggerate or fraudulently create business losses for his customers.

18. In addition to the false EITC claims, Burroughs also prepared federal income tax returns that falsely claimed Education Credits (American Opportunity and Lifetime Learning Credits) for customers who did not incur education expenses and did not qualify for the credits.

a. The American Opportunity Tax Credit is a credit for qualified education expenses paid for an eligible student for the first four years of higher education, with a maximum annual credit of $2,500 per eligible student. If the credit brings the amount of tax owed to zero, the taxpayer can have refunded 40 percent of any remaining amount of the credit (up to $1,000).

5

   b. The annual amount of the Lifetime Learning Credit is 20 percent of the first

    $10,000 of qualified education expenses paid for all eligible students with a

    maximum allowable amount of $2,000 for tax year 2015 (20 percent of

    $10,000).

   c. Colleges and universities are required by law to provide students with a Form

    1098-T, Tuition Statement, a statement of tuition billed and paid, and to report

    the information thereon to the IRS. However, IRS audits revealed that

    Burroughs prepared and filed returns falsely claiming education credits for

    customers for which no Form 1098-T was filed.

19. In interviews with IRS investigators, Burroughs' customers who claimed Education Credits on their tax returns stated that they did not seek the credits or report to the Burroughs that they were entitled to them.

20. In addition to falsifying Schedule Cs and claiming false Education Credits, Burroughs also fraudulently increased customers' refunds or decreased their liabilities by reporting false Residential Energy Credits on Form 5695. Residential Energy Credits allow individuals who made their homes more energy efficient in certain tax years to claim a tax credit on their income tax return.

21. Burroughs also created false itemized deductions for his customers, often by reporting charitable contributions that his customers had not made.

22. All of this conduct was devoted to a singular purpose—to decrease the taxes reported and/or to increase the refunds paid to Burroughs' customers through fraudulent or improper means.

23.     The harm to the Government caused by Burroughs' fraudulent tax preparation activities is significant. Based on just the tax returns summarized below, the Government suffered a total tax loss of $54,971, conservatively calculated at the lowest tax rate. In addition, based on the 161 returns the IRS examined just for tax years 2010 and 2011, Burroughs' fraudulent tax preparation activities resulted in additional tax assessments against the taxpayers involved totaling $458,473. The additional assessments included, for example, disallowed claims for Education Credits totaling $76,873.

### SPECIFIC EXAMPLES OF DEFENDANT'S FRAUDULENT TAX PREPARATION

24.     The returns described in the paragraphs below demonstrate the schemes employed by Burroughs to understate tax liabilities, overstate credits, and claim improper refunds for his customers. To protect taxpayer privacy, specific customers are referred to as Customers 1 through 18.

#### *Fraudulent Tax Return Preparation for Customers 1 and 2*

25.     Burroughs prepared Form 1040 individual income tax returns for Customers 1 and 2 for tax years 2010 and 2011. Customer 1 worked for an assisted living facility, and her husband, Customer 2, is a manager for a city government. Customer 1 started a small sales business in 2010, but did not actually sell anything until 2011.

26.     On their joint 2010 tax return, Burroughs prepared a Schedule C reporting gross receipts of $1 and falsely claimed expenses of $12,380, for a total purported business loss of $12,379. The largest expense reported on the Schedule C was depreciation of $6,420, but the depreciating asset was not described. The false business loss caused an EITC of $800 to be shown on the 2010 return that otherwise would not have been allowed.

7

27.     Burroughs falsely claimed an itemized deduction of $5,000 for charitable contributions on the 2010 return, exceeding the actual charitable contributions of Customer 1 and Customer 2 for the 2010 tax year by more than $4,000.

28.     Burroughs falsely claimed $3,500 in charitable gifts and $2,500 in unreimbursed employee expenses as itemized deductions on the 2011 tax return of Customer 1 and Customer 2.

29.     Burroughs prepared a Schedule C on the 2011 tax return for Customers 1 and 2 showing gross receipts of $500 and falsely claiming expenses of $15,146, for a purported business loss of $14,646. The largest fictitious expense reported on the Schedule C was $8,445 for depreciation of an undisclosed asset.

30.     On the 2011 Schedule C for Customers 1 and 2, Burroughs also included $1,275 as car and truck expenses, which Customers 1 and 2 did not incur and did not tell him they had. Burroughs also falsely claimed expenses on the Schedule C for advertising, supplies, internet, and uniforms.

### *Fraudulent Tax Return Preparation for Customer 3*

31.     Burroughs prepared Customer 3's Form 1040 tax return for 2011.  Customer 3 works for the Alabama Department of Corrections.

32.     On Customer 3's 2011 tax return, Burroughs also included a Schedule C for an entirely fictitious lawn care business.

33.     The 2011 return for Customer 3 reported gross receipts from the fictitious lawn care business of $2,000 and expenses of $16,704, for a purported business loss of $14,704. These expenses included $3,369 for the depreciation of undisclosed assets and $8,600 for a "Zero Turn Mower."  Customer 3's entire Schedule C was false.

8

34.     Burroughs also falsely included on Customer 3's 2011 tax return itemized deductions for $8,000 in charitable contributions, an Education Credit of $1,200, and a Residential Energy Credit of $1,500.

### Fraudulent Tax Return Preparation for Customer 4

35.     Burroughs prepared Customer 4's 2010 Form 1040 tax return, including a Schedule C for an auto sales business, reporting gross receipts of $2,000 and inflated expenses of $16,152, for a purported business loss of $14,152. The largest expense reported on the Schedule C was a $9,000 for depreciation of an undisclosed asset.

36.     Customer 4 had an auto sales business in 2010, but did not incur or provide Burroughs with most of the expenses included on the Schedule C. The false business loss caused an EITC of $1,823 to be shown on the return that otherwise would not have been allowable.

### Fraudulent Tax Return Preparation for Customer 5

37.     Burroughs prepared Customer 5's 2010 Form 1040 tax return, including a Schedule C for a child day care business, reporting gross receipts of $1,000 and inflated expenses of $20,818, for a purported business loss of $19,818. The largest expense reported on the Schedule C was a $13,546 depreciation expense for an undisclosed asset.

38.     Customer 5 tried to start a day care business in 2010, but was unsuccessful. She earned approximately $1,000, but did not have expenses of $19,000. Customer 5 did not provide Burroughs with any of the amounts shown on the Schedule C. The resulting false business loss caused an EITC of $2,614 to be shown on the return that otherwise would not have been allowable.

9

### *Fraudulent Tax Return Preparation for Customers 6 and 7*

39.    Burroughs prepared joint Form 1040 tax returns for Customers 6 and 7 for tax

years 2008, 2009, and 2010.  He falsely reported charitable contributions of $5,000 for 2008,

$6,000 for 2009, and $6,001 for 2010. However, Customers 6 and 7's charitable contributions

were less than $1,000 in 2008, less than $500 in 2009, and less than $100 in 2010.

40.    On Customers 6 and 7's 2010 Form 1040, Burroughs also claimed a false

Residential Energy Credit of $1,500; however, Customers 6 and 7 did not make any energy-

related improvements to their home or tell Burroughs they had.

### *Fraudulent Tax Return Preparation for Customer 8*

41.    Burroughs prepared Customer 8's 2010 Form 1040 tax return, including a

Schedule C for a security business, falsely reporting gross receipts of $500 and expenses of

$11,335, for a purported business loss of $10,835. The largest expense reported on the Schedule

C was a $10,200 depreciation expense for an undisclosed asset.

42.    Customer 8 was employed with a city government in 2010, but also had side jobs

that either paid cash or did not provide Forms W-2 or 1099. She did not have a business of her

own that would have required reporting income and expenses on Schedule C. The resulting false

business loss caused an EITC of $697 to be shown on the return that otherwise would not have

been allowable.

### *Fraudulent Tax Return Preparation for Customer 9*

43.    Burroughs prepared Customer 9's Form 1040 tax return for 2011, including a

Schedule C for a masonry contracting business, reporting gross receipts of $1,200 and inflated

expenses of $19,545, for a purported business loss of $18,345. The largest expense reported on

the Schedule C was an $18,725 depreciation expense for an undisclosed asset. Burroughs also

10

claimed a fictitious Residential Energy Credit of $500 on Customer 9's 2011 tax return
attributable to a purported $5,900 in repairs or improvements.

44.     Customer 9 did not provide Burroughs with any documents regarding his small
concrete contracting business. He earned approximately $2,000 in 2011 doing odd jobs and had
only a few hundred dollars in expenses.

### Fraudulent Tax Return Preparation for Customer 10

45.     Burroughs prepared Customer 10's Form 1040 tax return for 2010, including a
Schedule C for a lawn care business, reporting gross receipts of $500 and inflated expenses of
$22,864, for a purported business loss of $22,364. The largest expense reported on the Schedule
C was a $21,364 depreciation expense for an undisclosed asset. Burroughs also falsely claimed
Education Credits totaling $2,500 on Customer 10's 2010 tax return.

46.     Customer 10 provided lawn care services for family members and earned between
$1,000 and $2,000 over a five-month period in 2010. Customer 10 did not discuss depreciation
expenses with Burroughs. He also did not pay any education expenses and did not tell Burroughs
that he had.

### Fraudulent Tax Return Preparation for Customer 11

47.     Burroughs prepared Customer 11's Form 1040 tax return for 2011, including a
Schedule C for a Mary Kay beauty products sales business, reporting gross receipts of $700 and
expenses of $9,300, for a purported business loss of $8,600. The largest expense reported on the
Schedule C was an $8,500 depreciation of an undisclosed asset.

48.     Customer 11 did not sell Mary Kay products and did not tell Burroughs that she
did. The false business loss caused an EITC of $3,427 to be shown on the return that otherwise
would not have been allowable.

11

### *Fraudulent Tax Return Preparation for Customer 12*

49.     Burroughs prepared Customer 12's Form 1040 tax return for 2011, including a Schedule C for a fictitious beauty products sales business, reporting gross receipts of $2,000 and inflated expenses of $12,652, for a purported business loss of $10,652. The largest expense reported on the Schedule C was a $12,052 depreciation expense for an undisclosed asset. The false business loss caused an EITC of $3,216 to be shown on the return that otherwise would not have been allowable.

50.     Customer 12's annual sales for her small part-time hair business are usually between $3,000 and $4,000, with expenses of less than $2,000.

51.     Customer 12 drives to her job at an aircraft plant, but conducts her hair business in her home. Burroughs also falsely included on her tax return mileage expenses for the hair business.

### *Fraudulent Tax Return Preparation for Customer 13*

52.     Burroughs prepared Customer 13's Form 1040 tax return for 2011, including a Schedule C for a lawn services business, reporting gross receipts of $8,000 and inflated expenses of $27,837, for a purported business loss of $19,837. The largest expenses reported on the Schedule C were $9,585 in car and truck expenses, and $4,200 for depreciation of an undisclosed asset. The false business loss caused an EITC of $3,167 to be shown on the return that otherwise would not have been allowable.

53.     Customer 13 had a small lawn care business in 2011, but he told Burroughs that he spent only about $2,100 on equipment, plus some additional funds for maintenance on the equipment— far less than Burroughs reported on the tax return. He did not provide Burroughs with receipts for these expenses.

12

54.     Customer 13 also did not provide Burroughs with any information about truck expenses and did not know what items were represented by the claimed expense deduction. Customer 13 did not make any repairs to his truck in 2011.

### *Fraudulent Tax Return Preparation for Customer 14*

55.     Burroughs prepared Customer 14's Form 1040 tax return for 2010, including a Schedule C for a janitorial business, reporting gross receipts of $500 and inflated expenses of $11,396, for a purported business loss of $10,896. The largest expenses reported on the Schedule C were $4,200 in supplies, and $2,340 for cell phones. The resulting false business loss caused an EITC of $1,427 to be shown on the return that otherwise would not have been allowable.

56.     Customer 14 provided Burroughs with her Form W-2 and information regarding income and expenses from a small cleaning business she owned with a partner. She told Burroughs they bought vacuums, brooms, mops, and other cleaning supplies, but did not provide him with receipts. She did not provide Burroughs with any information suggesting they had business expenses exceeding $11,000.

### *Fraudulent Tax Return Preparation for Customer 15*

57.     Burroughs prepared Customer 15's Form 1040 tax returns for 2009 and 2010. The 2009 return included itemized deductions for charitable contributions totaling $4,101. The 2010 return included itemized deductions for charitable contributions totaling $3,500, plus a Residential Energy Credit of $1,200.

58.     Customer 15 actually made charitable contributions of between $1,000 and $1,500 in 2009 and between $1,500 and $2,000 in 2010. He provided Burroughs with no information about energy savings repairs or improvements and did not know why the Residential Energy Credit appeared on his tax return.

13

### *Fraudulent Tax Return Preparation for Customer 16*

59.  Burroughs prepared Customer 16's Form 1040 tax return for 2010, including a Schedule C for an entirely fictitious home health care business, reporting gross receipts of $0 and expenses of $14,325, for a purported business loss of $14,325. The largest expenses reported on the Schedule C were $7,200 in wages, and a $5,625 depreciation expense for an undisclosed asset. In addition, Burroughs claimed a $1,500 Residential Energy Credit on Customer 16's 2010 tax return.

60.  Customer 16 has never worked in a home health care business and did not own such a business in 2010.

61.  Customer 16 did not make any energy-savings repairs or improvements to her home in 2010.

### *Fraudulent Tax Return Preparation for Customer 17*

62.  Burroughs prepared Customer 17's Form 1040 tax return for 2010, including a Schedule C for a tutoring business, falsely reporting gross receipts of $1,000 and business expenses of $26,632, for a purported business loss of $25,632. The largest expense reported on the Schedule C was a $25,000 depreciation expense for an undisclosed asset. The false business loss caused an EITC of $129 to be shown on the return that otherwise would not have been allowable.

63.  Customer 17 actually received approximately $10,000 or less from her tutoring business in 2010, much more that the $1,000 Burroughs reported and did not have the significant business expenses reported on her return.

14

*Fraudulent Tax Return Preparation for Customer 18*

64.     Burroughs prepared Customer 18's Form 1040 tax return for 2010, including a

Schedule C for a perfume business, reporting gross receipts of $500 and inflated expenses of

$17,427, for a purported business loss of $16,927. The largest expense reported on the Schedule

C was an $11,700 depreciation expense for an undisclosed asset.

65.     Customer 18 did not own or operate any business in 2010 and did not tell

Burroughs she did.

## HARM CAUSED TO THE UNITED STATES

66.     Burroughs' pattern of preparing returns that understated his customers' taxes

and/or overstated their refunds, through the schemes described above, has resulted in the loss of

significant federal tax revenue.

67.     In many instances, Burroughs' understatement of his customer's liabilities and his

other fraudulent practices caused the United States to issue refunds that his customers were not

entitled to receive.

68.     Based on the returns it has examined, the IRS estimates that it has suffered a loss

of $54,971, calculated at the lowest tax rate, from the false tax returns described with

particularity in this complaint in addition to the loss of significant tax revenue from the hundreds

of returns Burroughs prepared that are not included in this discussion.

69.     The IRS also examined an additional 161 federal income tax returns that

Burroughs prepared for tax years 2010 and 2011. These examinations resulted in additional

assessments to the taxpayers totaling $458,473, which would have been lost had the

examinations not been conducted.

70.     In addition, the United States believes that it also lost significant tax revenue from the hundreds of returns filed by Burroughs that were not examined.

71.     Defendant has further harmed the United States because the IRS must devote its limited resources to identifying his customers, ascertaining their correct tax liability, recovering any refunds erroneously issued, and collecting any additional taxes and penalties.

72.     In addition to the direct harm caused by preparing tax returns understating his customers' tax liabilities, Defendant's activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

**COUNT I**
**INJUNCTION UNDER 26 U.S.C. § 7407**
**FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 and 6695**

73.     The United States incorporates by reference the allegations contained in paragraphs 5 through 72 as if fully set forth herein.

74.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin is a tax return preparer from, inter alia, (a) engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695; or (b) engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

75.     26 U.S.C. § 6694(a) penalizes a return preparer who prepares a return that contains an understatement of tax liability or overstatement of a refund due to an unreasonable position that the return preparer knew or reasonably should have known was unreasonable.

76.     26 U.S.C. § 6694(b) penalizes a return preparer who prepares a return that contains an understatement of tax liability or overstatement of a refund that is due to a willful

attempt to understate the liability for tax or a reckless or intentional disregard of rules or regulations.

77.    26 U.S.C. § 6695(g) penalizes a tax provider for failing to exercise due diligence in determining eligibility for the EITC.

78.    In order for a court to issue an injunction under 26 U.S.C. § 7407(b), the court must find (a) that the tax return preparer has engaged in the prohibited conduct; and (b) that injunctive relief is appropriate to prevent recurrence of such conduct.

79.    The court may permanently enjoin the person from further acting as a federal tax return preparer if it finds that a preparer has continually or repeatedly engaged in such conduct and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would be insufficient to prevent that person's interference with the proper administration of the internal revenue laws.

80.    As described in detail above, Burroughs has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal income tax returns that understate his customers' liabilities and/or overstate their refunds based on unreasonable positions.

81.    Burroughs has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating his customers' liability and acting with a reckless and intentional disregard of internal revenue laws and regulations.

82.    Burroughs has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695(g) by failing to exercise due diligence in determining eligibility for the EITC. The Schedule C items Burroughs reported on his customers' returns improperly qualified them for the EITC.

17

83.     Additionally, Burroughs has continually and repeatedly engaged in fraudulent and deceptive conduct that violates 26 U.S.C. § 6694 and that substantially interferes with the administration of the internal revenue laws.

84.     If he is not enjoined, Defendant is likely to continue preparing false and fraudulent federal income tax returns.

85.     A narrower injunction would be insufficient to prevent Burroughs' interference with the administration of the federal tax laws. As described above, Burroughs prepares returns understating the filer's liability through multiple schemes that report false information on his customers' tax returns. Unless Burroughs is permanently enjoined, the IRS will be required to spend additional resources to uncover future schemes. The variety of items falsely manipulated by Burroughs supports a complete injunction. The conduct alleged above is just a sampling of what the IRS has uncovered thus far; it is possible that Burroughs could manipulate additional returns using different methods to achieve the same results of understated tax liabilities or overstated claims for refund. The harm resulting from these schemes includes both the expenditures of these resources and the revenue loss caused by the improper deductions and credits Burroughs claims on returns he prepares. Accordingly, only a permanent injunction is sufficient to prevent future harm.

86.     Burroughs should be permanently enjoined from acting as a tax return preparer under 26 U.S.C. § 7407.

## COUNT II
## INJUNCTION UNDER 26 U.S.C. § 7408
## FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701

87.     The United States incorporates by reference the allegations contained in paragraphs 5 through 72 as if fully set forth herein.

18

88.     Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

89.     26 U.S.C. § 6701 penalizes a person who aids or assists in the preparation or presentation of any portion of a tax return when the person knows or has reason to believe that such portion will be used in connection with a material matter arising under the internal revenue laws and will result in an understatement of tax liability of another person.

90.     As described above, Burroughs has engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claimed credits he knew the taxpayer was not entitled to and deductions that he knew to be false or inflated and knew would result in the understatement of the taxpayer's federal tax liability.

91.     Burroughs' repeated actions, including those described in paragraphs 25 through 74 above, fall within the ambit of conduct that may be restrained under 26 U.S.C. § 7408(c)(1), and injunctive relief is appropriate to prevent recurrence of this conduct.

92.     Accordingly, Burroughs should be permanently enjoined from preparing tax returns subject to penalty under 26 U.S.C. § 6701.

## COUNT III
### INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH THE ENFORCEMENT OF INTERNAL REVENUE LAWS

93.     The United States incorporates by reference the allegations contained in paragraphs 5 through 72 as if fully set forth herein.

94.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of internal revenue laws.

19

95. Burroughs has continually and repeatedly engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws.

96. Burroughs' conduct has caused and will continue to cause substantial tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Unless Burroughs is enjoined from preparing returns, the IRS will have to devote substantial and unrecoverable time and resources auditing Burroughs' customers individually to detect false, fraudulent, or overstated credits and deductions in future returns, assessing any deficiencies against the customers, and collecting any deficiencies or recovering any erroneous refunds issued.

97. The United States has no other adequate remedy at law besides a permanent injunction to prevent the harm Burroughs will continue to cause through preparation of a large volume of erroneous returns which generate substantial tax losses. Much of these tax losses will never be discovered. Of those that are discovered, the United States will be unable to recover all those losses through the typical notice and collection procedures available to it. In any event, none of the significant resources necessary to discover and recover these losses are themselves recoverable by the United States.

98. The irreparable harm to the United States without the injunction far outweighs any harm the injunction might cause Burroughs. Burroughs' business and income are derived largely from the preparation of fraudulent income tax returns, which is not an interest that this Court should weigh in deciding whether to issue a permanent injunction. Burroughs will be able to pursue other financial endeavors to support himself, but the United States cannot recover the additional funds lost if Burroughs is allowed to continue preparing tax returns.

99.    Enjoining Burroughs is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop his illegal conduct and the harm it causes the United States and the public fisc. Permanently enjoining Burroughs would also ensure that members of the public are not unknowingly subject to Burroughs' fraudulent return preparation practices, which in turn could subject them to audits by the IRS, liabilities for additional taxes, interest and penalties, and IRS collection actions.

100.    The public interest is also served by having each person voluntarily pay the full amount of taxes that they owe and by having the Government collect the full amount of taxes to which it is entitled. This prevents those people whose tax returns are correctly prepared from shouldering a greater portion of the tax burden at the expense of people whose tax returns were fraudulently prepared.

101.    Burroughs should therefore be enjoined under 26 U.S.C. § 7402(a).

WHEREFORE, Plaintiff United States of America respectfully prays for the following relief:

A.    That the Court find that Russell Burroughs, individually and doing business as Computer Services, LLC, has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and has continually and repeatedly engaged in other fraudulent and deceptive conduct that substantially interferes with the administration of the tax laws; that injunctive relief is appropriate under 26 U.S.C. § 7407 to bar him from acting as a federal tax return preparer and prevent recurrence of that conduct; and that an injunction tailored only to the specific conduct described would be insufficient to prevent Burroughs' interference with the proper administration of the internal revenue laws;

21

B.    That the Court find that Burroughs, individually and doing business as Computer Services, LLC, has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C.    That the Court find that Burroughs, individually and doing business as Computer Services, LLC, has repeatedly and continually engaged in conduct that substantially interferes with the proper enforcement and administration of the internal revenue laws, and that injunctive relief against him is appropriate to prevent recurrence of that conduct pursuant to the Court's inherent equity power and 26 U.S.C. § 7402(a);

D.    That the Court enter a permanent injunction prohibiting Russell Burroughs, acting individually, through Computer Services, LLC, or otherwise, from:

(1)    acting as a federal tax return preparer or preparing, filing, or assisting in the preparation or filing of, or directing the preparation or filing of federal tax returns, amended returns, or other tax-related documents and forms, including any electronically-submitted tax returns or tax-related documents, for any person or entity other than himself or his spouse;

(2)    preparing, filing, or assisting in the preparation or filing of, federal tax returns or amended returns that understate tax liability or overstate federal tax refunds based on positions that he knows or reasonably should know are unreasonable;

(3)    engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and 6701 or any other penalty provision in the Internal Revenue Code;

(4)    engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

22

E.      That the Court order, without further proceedings, the immediate revocation of any PTIN held by, or assigned to, or used by Burroughs pursuant to 26 U.S.C. § 6109, and order the immediate revocation of any EFIN held by, assigned to, or used by Burroughs;

F.      That the United States be entitled to conduct discovery to monitor Burroughs' compliance with the terms of any permanent injunction entered against him;

G.      That the Court retain jurisdiction over this action to enforce any permanent injunction entered against Burroughs; and

H.      That the Court grant the United States such other and further relief as is just and equitable.

Dated: May 20, 2016                          Respectfully submitted,

                                             CAROLINE. D. CIRAOLO
                                             Acting Assistant Attorney General

                                     By:     _s/ Bruce T. Russell_____
                                             Bruce T. Russell
                                             Trial Attorney, Tax Division
                                             U.S. Department of Justice
                                             Post Office Box 14198
                                             Ben Franklin Station
                                             Washington, D.C. 20044
                                             (202) 514-5900
                                             (202) 514-9868 (facsimile)
                                             bruce.t.russell@usdoj.gov
                                             *Attorneys for the United States*

GEORGE L. BECK, JR.
United States Attorney
Middle District of Alabama
*Of Counsel*

23